## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Jose Maldonado-Maldonado, | Case No. 0:19-cv-02402-JRT-KMM |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| D. Cole (*Acting Warden, FPC – Duluth*), | |
| REspondent. | |

Jose Maldonado-Maldonado, Reg. No. 45917-069, Federal Prison Camp, P.O. Box 1000, Duluth, MN 55814, *pro se*

Ana H. Voss, Ann M. Bildtsen, and Chad A. Blumenfield, United States Attorney's Office, 300 S. 4th St., Ste. 600, Minneapolis, MN 55415, counsel for Respondent

Jose Maldonado-Maldonado (hereafter "Mr. Maldonado" or "Petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. [Pet., ECF No. 1.] Mr. Maldonado is currently confined at the Federal Prison Camp in Duluth, Minnesota ("FPC Duluth"). In his Petition, Mr. Maldonado alleges that a disciplinary officer imposed sanctions against him, including the lass of good conduct time, for violating prison rules preventing the possession of a cellular phone. [Pet. at 2 ¶ 6.] He claims that the sanctions imposed violate his constitutional right to due process. [*Id.* at 7–8 ¶ 13.] Mr. Maldonado specifically asks the Court to reverse a portion of the sanction he received forfeiting 160 days of non-vested good conduct time. [*Id.* at 9 ¶ 15.] The Respondent opposes the Petition. [Resp., ECF No. 7.] For the reasons that follow, the Court recommends that the Petition be denied and this matter be dismissed with prejudice.

## I.    Background

On August 30, 2018, Lieutenant D. Bergerson, a member of FPC Duluth staff, prepared an incident report accusing Mr. Maldonado of violating prison rules prohibiting the "Possession, Manufacture, Introduction, or Loss of a Hazardous Tool." [Pet., Ex. 1

(Incident Report), ECF No. 1-1.] Lieutenant Bergerson reported that he located a cell phone "under the ice machine in Dorm 209." While reviewing it, he saw a text message sent on July 29, 2018 to a phone number ending in 5458. Lieutenant Bergerson reviewed the Federal Bureau of Prisons' ("BOP") Truview program for any use of the 5458 phone number and found that it was uniquely connected to Mr. Maldonado. Mr. Maldonado's account specifically listed the number in connection with a personal friend. Another FPC Duluth official delivered the incident report to Mr. Maldonado later in the day on August 30th. [Incident Report at 1.]

FPC Duluth's Discipline Hearing Officer ("DHO") held a hearing on the Incident Report on October 18, 2018. [Pet., Ex. 2 (DHO Report), ECF No. 1-2.] Mr. Maldonado was advised of his rights before the DHO and indicated that he understood those rights. He provided no documentary evidence and did not request any witnesses. Mr. Maldonado requested a staff representative, identified as F. Duran, to act as an interpreter during the hearing, and indicated he was ready to proceed. [DHO Report ¶ V.] The DHO considered the incident report prepared by Lieutenant Bergerson and Mr. Maldonado's statements to the investigating officer as well as at an intermediate hearing with the Unit Disciplinary Committee ("UDC"). Mr. Maldonado denied having a cell phone and said that he gave the 5458 phone number to a friend when he spoke to the investigating officer. At the UDC hearing, he asserted that he was "[n]ot guilt of possession [of] the cell phone. I never used it. I gave the phone number to another inmate no longer there to get some help." [*Id.*] The DHO "did not find [his] defense credible" and concluded that he violated BOP disciplinary Code 108 prohibiting possession of a cell phone. [*Id.*] The DHO imposed sanctions including the loss of commissary privileges, visiting privileges, phone privileges, and impounding of personal property. [*Id.* ¶ VI.] In addition, the DHO sanctioned Mr. Maldonado with loss of 41 days good conduct time and 160 days of non-vested good conduct time. [*Id.*]

Mr. Maldonado appealed the DHO's decision. [Pet., Ex. 3 (Appeal Response), ECF No. 1-3.] In his appeal, Mr. Maldonado claimed that he was transferred to the United States as a prisoner, does not speak any English, and does not understand this culture. [*Id.* at 4.] He claimed that once he was sent to FPC Duluth, all his belongings were lost by the United States Marshals, and he was concerned about getting in touch

with his family so they could send money to him. Mr. Maldonado asserted that he asked another Spanish speaking inmate who owned the cell phone to contact his family on his behalf so they could send money to him. Based on these circumstances, Mr. Maldonado claimed that the sanctions were too severe and should be removed. [*Id.*; *see also id.* at 5.] His appeal was denied because: (1) the DHO's decision was based on the evidence detailed in the DHO Report; (2) the determination that the violation occurred was reasonable and supported by the evidence; (3) his due process rights were upheld; and (4) the sanctions imposed "were commensurate to the severity level of the offense committed and in compliance with policy." [*Id.* at 1.] In particular, given that Mr. Maldonado arrived at FPC Duluth on March 27, 2018, and the text message in question was sent on July 29, 2018, the claim that another inmate sent the message on his behalf so he could get money to replace lost property was rejected. [*Id.* at 6.]

Mr. Maldonado submitted a disciplinary record concerning another inmate, O.L., who was found to have violated Code 108 of the BOP's disciplinary regulations for having a cell phone. [Pet., Ex. 4 (O.L. Report), ECF No. 1-4.] The O.L. Report indicates that during a February 2019 search of a shared dorm room, an officer found a cell phone between the inmates' beds. Inmate O.L. admitted to the UDC that the cell phone belonged to him and that the other roommates had nothing to do with it. He also admitted the violation at the DHO hearing. [*Id.* ¶ V.] O.L. received similar disciplinary sanctions to those Mr. Maldonado received, except O.L. was only sanctioned with 41 days loss of good conduct time and no loss of non-vested good conduct time. [*Id.* ¶ VI.] Similarly, Mr. Maldonado submitted a disciplinary record concerning an inmate with the initials B.C-B. [Pet., Ex. 5 (B.C-B. Report), ECF No. 1-5.] The B.C-B. Report also indicates that a cell phone was located during the search of a shared dorm room, B.C-B. admitted the cell phone belonged to him at the DHO hearing, and B.C-B. lost only 41 days of good conduct time. B.C-B. was not sanctioned with loss of non-vested good conduct time. [*Id.* ¶¶ V–VI.]

## II.   Analysis

Mr. Maldonado argues that taking his non-vested good conduct time as a result of his incident report violates his due process rights. He also claims that it was inappropriate

for O.L. and B.C-B. to have received less severe sanctions for violating the same disciplinary rule prohibiting possession of a cell phone. [Pet. ¶ 15.] Because Mr. Maldonado is a non-lawyer representing himself in this matter, the Court construes his pleadings and other submissions liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawers….") (cleaned up). Construing pleadings liberally means that "if the essence of an allegation is discernible, the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Hazley v. Roy*, 378 F. Supp. 3d 751 (D. Minn. 2019) (internal quotation marks omitted).

The Respondent argues: (1) that Mr. Maldonado received the procedural guarantees afforded him under the Fifth Amendment's Due Process Clause; (2) that sufficient evidence supports the determination that he violated the disciplinary code; and (3) that the sanctions he received are authorized by BOP policy. [Resp. at 8–14.] The Respondent further asserts that Mr. Maldonado's claim that he was treated differently from similarly situated inmates should be rejected. [*Id.* at 14–16.] For the reasons that follow, although the Court is sympathetic to the argument that Mr. Maldonado's punishment in this case seems uniquely severe, the Court concludes that Mr. Maldonado's constitutional rights were not violated and that his habeas petition should be denied.

## A. Procedural Due Process Claim

Depriving an inmate of good time credits "as discipline for violating a prison rule implicates a liberty interest that is protected by the Due Process Clause." *Espinoza v. Peterson*, 283 F.3d 949, 951 (8th Cir. 2002). The "process constitutionally due" requires prison disciplinary proceedings to conform to the following rules:

> the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in

4

his defense; and (3) a written statement by the factfinder of the evidence
relied on and the reasons for the disciplinary action....

*Id.* (quoting *Superintendent v. Hill*, 472 U.S. 445, 454 (1985)). Further, the Due Process
Clause demands that "the findings of the prison disciplinary board [must be] supported
by some evidence in the record." *Id.* at 951–52. The "some evidence" standard is quite
deferential to prison officials. It "does not require examination of the entire record,
independent assessment of the credibility of witnesses, or weighing of the evidence."
*Flowers v. Anderson*, 661 F.3d 977, 980 (8th Cir. 2011) (quotation marks omitted). "If
there is any evidence in the record that could support the finding of the disciplinary
authority, then the sanctions comport with due process." *Id.* (quotation marks omitted).

### 1.  Procedures Used

Based on the record before the Court, each of these requirements was met in
Mr. Maldonado's case. Mr. Maldonado received advanced written notice of the charges
against on August 30, 2018, when the Incident Report was provided to him. [Incident
Report; Decl. of Tawanga Ingram ("Ingram Decl.") ¶¶ 9–10 & Ex. D, ECF No. 8.]
Because Mr. Maldonado could not communicate in English, the Incident Report
proceedings were suspended temporarily. [Ingram Decl. ¶ 10.] On September 9, 2018,
before discipline was imposed, a Spanish interpreter read the Incident Report to him. [*Id.*]
The UDC hearing, the first step in the BOP's disciplinary process after the Incident
Report, did not take place until September 18, 2018. [*Id.* ¶ 12.] Mr. Maldonado does not
argue that FPC Duluth staff failed to provide him advance notice of the charges.

Mr. Maldonado also had a chance to call witnesses and present documentary
evidence on his behalf, but he declined to do so. [Ingram Decl. ¶¶ 12–14 & Exs. E, F, G.]
After the UDC hearing on September 18, 2018, Mr. Maldonado indicated that he wanted
a staff representative at the DHO hearing but did not wish to have witnesses. [*Id.*, Ex. F.]

The DHO Report indicates he waived the right to call witnesses. [*Id.*, Ex. G at 1.] Again, Mr. Maldonado does not claim that he was deprived of this procedural protection.[1]

Mr. Maldonado also received a written statement by the factfinder of the evidence relied on in imposing the discipline he received. This occurred not only at the DHO level, but also following his administrative appeals. [Ingram Decl., Ex. G at 3–4; DHO Report ¶ V; Appeal Response at 2, 4, 6.] He does not argue otherwise here.

For the first time in his reply brief, Mr. Maldonado argues that he was constitutionally entitled to review BOP video surveillance evidence, citing *Lennear v. Wilson*, 937 F.3d 257 (4th Cir. 2019). [Reply at 3.] In *Lennear*, the Fourth Circuit reversed the district court's conclusion that prison officials did not violate the petitioner's due process rights by failing to review "allegedly pertinent video surveillance evidence." 937 F.3d at 262. The court held that "inmates at risk of being deprived of a liberty interest, like good time credits, have a qualified right to obtain and present video surveillance evidence." *Id.* The underlying incident report in *Lennear* concerned events that occurred as correctional officers were attempting to take a count of inmates in a cell block. Correctional officers asserted that the petitioner was disobedient and then encouraged other inmates to become disruptive and the petitioner asserted that he was simply attempting to get permission to use the restroom while the officers ordered everyone to stay in place while the count was finished. *Id.* at 263–265. The incident report and the DHO report were silent about whether the petitioner requested video evidence, and the BOP's Regional Director rejected the administrative appeal because he did not timely request such evidence. *Id.* at 265–66. However, the petitioner maintained that he had requested video evidence throughout the disciplinary process. *Id.* at 267. The Fourth Circuit found that an inmate facing loss of good conduct time has a qualified right of access to both review such evidence himself and to have the DHO review it upon request. *Id.* at 269–74. The court further held that it was error for the district court to

---

[1]     Mr. Maldonado cites *Pilgrim v. Luther*, 571 F.3d 201 (2nd Cir. 2009), in which the court discussed a prisoner's right to "assistance in marshaling evidence and presenting a defense in advance of a disciplinary hearing." *Id.* at 206 (internal quotation marks omitted). However, he does not allege that the BOP denied him such assistance.

CASE 0:19-cv-02402-JRT-KMM   Doc. 11   Filed 12/13/19   Page 7 of 13

conclude that the petitioner did not make a timely request for review video evidence without conducting an evidentiary hearing. *Id.* at 274–76.

Assuming that such qualified rights to video evidence are consistent with governing Supreme Court and Eighth Circuit precedent, this case is distinguishable from *Lennear* for at least three reasons. First, there is no indication in the record that any video surveillance footage exists, so it is not possible for the Court to determine, based on the record before it, that FPC Duluth officials refused to consider it. Second, whereas the petitioner in *Lennear* presented a well-supported factual dispute about the timeliness of his request for video evidence, there is nothing in the record here to indicate that Mr. Maldonado ever made a request for video evidence. He does not even indicate that he made such a request in his reply brief. The BOP's disciplinary procedures provide that if an inmate "requests exculpatory evidence, such as video or audio surveillance, the investigatory must make every effort to review and preserve the evidence." [Ingram Decl., Ex. A at 19.] Finally, in *Lennear*, the nature of the incident that led to the petitioner's discipline made video evidence particularly valuable to his ability to put on a defense. Here, it would be very difficult to locate any video evidence that would support or undermine Mr. Maldonado's claim of innocence. *See Lennear*, 937 F.3d at 270 ("[T]he qualified right to 'present' evidence in prison disciplinary proceedings necessarily contemplates a qualified right to access such evidence, particularly evidence that is potentially exculpatory or otherwise likely to assist an inmate in mounting a defense.") (citing *Meis v. Gunter,* 906 F.2d 364, 367 (8th Cir. 1990) ("[Inmates] have a right to reasonable access to information necessary to put on a defense, including prison documents….")). BOP regulations suggest that such evidence should be reviewed where it is relevant to the incident in question. [*See* Ingram Decl., Ex. A at 19 ("It would also be prudent for the investigator to review and preserve the video or audio surveillance even if the inmate does not make a specific request as such evidence is relevant to the incident.").] But it seems that someone might need to review months of video from many locations within the prison to prove or disprove Mr. Maldonado's guilt.

For these reasons, the Court concludes that Mr. Maldonado received constitutionally adequate procedural safeguards prior to the imposition of discipline.

## 2. Some Evidence

The Court concludes that the "some evidence" standard is satisfied in this case. The DHO Report indicates that the hearing officer saw a photograph of the cell phone displaying text messages to the 5458 phone number. The hearing officer also was made aware that the Truview program records "revealed the [5458] number as an active number unique only to inmate Madonado-Maldonado … specifically listed as his friend Pepin R." [Ingram Decl. Ex. G.] This evidence is consistent with information in the record indicating that Mr. Maldonado possessed the phone. [*See* Ingram Decl., Ex. D at 3–7.] This evidence is sufficient to satisfy the highly deferential some-evidence standard. Although Mr. Maldonado denied possessing the cell phone, the DHO and the BOP's administrative appeal authorities rejected his explanations. It is not appropriate for this Court to reassess the credibility of any witnesses or to reweigh the evidence in applying the some-evidence standard. *Hill*, 472 U.S. at 455; *Flowers v. Anderson*, 661 F.3d 977, 980 (8th Cir. 2011). As a result, the Court finds that some evidence supports the BOP's determination that Mr. Maldonado violated the BOP's regulation prohibiting possession of a cell phone.

Because some evidence supports the decision and the BOP provided Mr. Maldonado with all the procedural protections he was constitutionally entitled to receive, the Court concludes that his procedural due process claim should be denied.

## B. Similarly Situated Inmates

Mr. Maldonado asserts that the forfeiture of so much of his non-vested good conduct time violates his due process rights because he has been treated more harshly than other inmates. For the reasons explained below, the Court finds that this argument is properly construed as an equal protection claim and concludes that such a claim is unsupported.

## 1. Due Process and Disparate Treatment

The Court notes that the BOP's regulations clearly prohibit the possession of a "portable telephone" and make violations of Code 108 one of the greatest severity offenses in the prison disciplinary system. As such, the available sanctions include

disallowance of up to 41 days of good conduct time and forfeiture of up to 100% of non-vested good conduct time. [Ingram Decl., Ex. A at 44–45.] The BOP acted within the parameters established by these regulations in adjudicating Mr. Maldonado's claim. *See Elliott v. Paul*, Case No. 0:18-cv-00403-NEB-KMM, 2018 WL 6729658, at \*6 (D. Minn. Nov. 14, 2018) (rejecting claim that disciplinary sanctions were excessive where decisions were consistent with punishment provided for in prison rules), *report and recommendation adopted* 2018 WL 67270064 (D. Minn. Dec. 20, 2018); *see also West v. Williams*, Civil Action No. 2:15-cv-10, 2015 WL 5042158, at \*6 (N.D. W.Va. Aug. 25, 2015) ("[A]n inmate is not entitled to relief on a claim that sanctions were too severe as long as the sanctions imposed were within the limits set in the BOP's disciplinary regulations.").

However, Mr. Maldonado is not challenging the BOP's authority to impose such a significant punishment, but claims he was given a more onerous penalty than "other similarly situated inmates" in violation of due process. [Pet'r Mem. at 6, ECF No. 3.] He cites several cases in support of this argument, but they do not involve a due process analysis. [*Id.*] Rather, these cases analyze allegations of different treatment for similarly situated persons under the standards applicable to equal protection claims.[2]

Mr. Maldonado's disparate treatment claim is nevertheless connected to the Due Process Clause of the Fifth Amendment. Although the Fifth Amendment does not explicitly reference "equal protection of the laws," that phrase is found in the Fourteenth Amendment. U.S. Const., amend XIV, § 1 ("No State shall … deny to any person within

---

[2]   *See Ryan v. Scism*, 474 Fed. App'x 49, 52–53 (3rd Cir. 2012) (per curiam) (affirming dismissal of equal protection claim based on alleged discrimination based on race of inmates charged with possession of cell phones); *Hall v. Zickefoose*, 448 Fed. App'x 184, 186–87 (3rd Cir. 2011) (per curiam) (same); *Morrison v. Garraghty*, 239 F.3d 648 (4th Cir. 2001) (finding an equal protection violation based on a prison's policy applicable only to Native Americans); *Davalos v. Marques*, Case No. 18-cv-1227 (ECT/ECW), 2018 WL 5723952, at \*5 n.5 (D. Minn. Oct. 3, 2018) (rejecting claim of different treatment from allegedly similarly situated inmate under an equal protection analysis), *report and recommendation adopted* 2018 WL 5724047 (D. Minn. Nov. 1, 2018); *West v. Williams*, Civil Action No. 2:15-cv-10, 2015 WL 5042158, at \*7–8 (N.D. W.Va. Aug. 25, 2015) (rejecting disparate treatment claim under equal protection analysis); *Richardson v. Williams*, Civil Action No. 3:14-CV-129, 2015 WL 3937004, at \*6–7 (N.D. W.Va. June 26, 2015) (same).

its jurisdiction the equal protection of the laws."). And equal protection standards are applicable in cases involving actions taken by the federal government because "the Due Process Clause of the Fifth Amendment contains an equal protection component prohibiting the United States from invidiously discriminating between individuals or groups." *Washington v. Davis*, 426 U.S. 229, 239 (1976). Accordingly, the Court finds that although Mr. Maldonado has only cited due process concerns in his briefing, his claim is properly construed as one for violation of his right to equal protection.

### 2. Equal Protection

"[T]he first step in an equal protection case is determining whether the plaintiff has demonstrated that [he] was treated differently than others who were similarly situated to [him]." *Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994). If he is similarly situated to other inmates who are treated differently, the second step requires the plaintiff to show that the reason for the disparate treatment is "intentional or purposeful discrimination." *Id.* at 733. On this record, the Court concludes that Mr. Maldonado has failed to make out a viable equal protection claim.

First, the other inmates identified by Mr. Maldonado as receiving more favorable treatment are not similarly situated to him for purposes of the disciplinary sanctions imposed. Although Mr. Maldonado has shown that O.L. and B.C-B. were also disciplined for possession of a cell phone, both admitted to violating the applicable prison rule.[3] [Ingram Decl. ¶¶ 19–22.] It is quite common for those who accept responsibility for conduct violating rules to receive less severe punishment than those who do not admit misconduct. This is a meaningful difference between Mr. Maldonado and the alleged comparators that supports the variations in sanctions that were imposed.

Second, even if Mr. Maldonado is similarly situated to these other inmates, the record is devoid of proof that Mr. Maldonado received a more severe sanction for discriminatory reasons. *See Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 815 (8th Cir.

---

[3]     There are no details in the record concerning the other inmates whom Mr. Maldonado identifies for the first time in his reply brief. [Reply at 4 (chart listing six additional comparators).] Thus, the Court cannot make any determination that they are, in fact, similarly situated to Mr. Maldonado

CASE 0:19-cv-02402-JRT-KMM   Doc. 11   Filed 12/13/19   Page 11 of 13

2008). The record does not support a finding that BOP officials engaged in any invidious discrimination. Instead it appears that the discipline imposed on him was based on the evidence that he violated the BOP's rules. Mr. Maldonado states only that his different treatment was "perhaps based upon his minimal understanding of the English language," [Pet'r Mem. at 6], but this is too speculative a basis on which to conclude that discipline was imposed for improper reasons.

For these reasons, the Court finds that Mr. Maldonado has failed to show that he is entitled to habeas relief based on the alleged different treatment of similarly situated inmates.

### C. Eighth Amendment

For the first time in his Reply, Mr. Maldonado asserts that the 201 total days of lost good conduct time is a violation of the Eighth Amendment's prohibition on cruel and unusual punishments and excessive fines. [Reply, ECF No. 10.] For two reasons, Mr. Maldonado's argument does not carry the day. First, courts have rejected similar Eighth Amendment claims when the disallowance of good conduct time and non-vested good conduct time falls "within the range of acceptable punishments outlined by the applicable regulations." *See, e.g.*, *Millard v. Hufford*, 415 Fed. App'x 348, 350 (3rd Cir. 2011) (rejecting Eighth Amendment claim in case involving 54-day disallowance of good conduct time and 270-day forfeiture of non-vested good conduct time); *Bowen v. Thomas*, Civil Action No. 1:14-cv-00037, 2016 WL 4385868, at *4 (M.D. Pa. May 20, 2016) ("The denial of good conduct time as a disciplinary sanction does not violate the Eighth Amendment.") (citing *Hanvey v. Pinto*, 441 F.2d 1154, 1155 (3d Cir. 1971) (per curiam); *Giba v. Cook*, 232 F. Supp. 2d 1171, 1186 (D. Or. 2002)); *Beste v. Anderson*, Civil No. 05-2901 (DSD/FLN), 2006 WL 1581360, at *3 (D. Minn. June 5, 2006) (concluding that loss of 20 days of good conduct time for violation of prison rules was insufficient to state an Eighth Amendment claim). Here, though the penalty imposed on Mr. Maldonado may have been the maximum allowed, it did not exceed the limitations imposed by BOP regulations.

Second, the Court notes that a disciplinary sanction forfeiting an inmate's good conduct time is not a "fine" within the meaning of the Eighth Amendment's prohibition

11

against excessive fines. As the Supreme Court has held, when the Constitution was adopted, "the word 'fine' was understood to mean a payment to a sovereign as punishment for some offense." *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265 (1989). The Excessive Fines Clause "limits the government's power to extract payments … as punishment for some offense." *Austin v. United States*, 509 U.S. 602, 609–10 (1993) (internal quotation marks omitted).

Nothing in the record here suggests that an excessive fine or cruel and unusual punishment was imposed as punishment for Mr. Maldonado's violation of prison disciplinary rules. His Eighth Amendment claim should be rejected.

## Recommendation

The Court is not unsympathetic to Mr. Maldonado's position. The forfeiture of 160 days of non-vested good conduct time is remarkably severe and delays his release from prison by almost half a year. But this Court does not exercise general oversight for the propriety of any disciplinary sanction imposed in exercising its habeas jurisdiction. Accordingly, consistent with the foregoing, the Court makes the following recommendation:

1. Mr. Maldonado's Petition **[ECF No. 1]** should be **DENIED**.

2. This action should be **DISMISSED WITH PREJUDICE**.

Date: December 13, 2019

   *s/Katherine Menendez*
Katherine Menendez
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.